UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| COZIE WILLIAMS, JR. ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:06-CV-83-PRC |
| ) | |
| SCHOOL CITY OF EAST CHICAGO, ) | |
|     Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on (1) a Motion for Summary Judgment [DE 28], filed by Defendant School City of East Chicago ("East Chicago Schools") on June 1, 2007; (2) a Motion for a Decision on Their Motion for Summary Judgment [DE 31], filed by East Chicago Schools on July 30, 2007; and (3) a Motion on Behalf of the School City of East Chicago for a Decision on Their Motion for Summary Judgment and [sic] Strike Plaintiff's Responses to Request for Admissions [DE 33], filed by East Chicago Schools on August 13, 2007.  For the following reasons, the Motion to Strike is granted, the Motion for Summary Judgment is granted, and the Motions for Decision are denied as moot.

**PROCEDURAL BACKGROUND**

Plaintiff Cozie Williams, Jr. filed a timely written charge of race discrimination with the Equal Employment Opportunity Commission ("EEOC") through the Gary Human Relations Commission on September 19, 2005.  Thereafter, Williams received a Notice of Right to Sue from the EEOC on December 13, 2005.  Within ninety days of his receipt of the Notice of Right to Sue, Williams filed his Complaint with this Court on March 8, 2006.  In the Complaint brought under

1

Title VII of the Civil Rights Act of 1964, as amended, Williams alleges that East Chicago Schools discriminated against him based on race when he was suspended and subsequently terminated as a School Bus Driver.  Williams is proceeding *pro se* in this matter.

An Answer to the Complaint was filed by East Chicago Schools on April 21, 2006.

On August 8, 2006, East Chicago Schools filed a Motion to Compel Plaintiff's Deposition Testimony and Motion to Compel Plaintiff to Answer Interrogatories and Request for Production of Documents, and on September 1, 2006, the Court granted in part and denied in part the motion, ordering Williams to comply with the discovery requests.  At that time, the discovery deadline was set for September 22, 2006.

East Chicago Schools filed a Motion to Dismiss on October 11, 2006, on the basis that Williams had failed to comply with the Court's September 1, 2006 Order regarding his cooperation with East Chicago Schools' discovery requests.  At a November 21, 2006 in-person hearing, the Court denied the Motion to Dismiss but ordered Williams to respond to East Chicago Schools' discovery requests.  In addition, the discovery deadline was reset to May 1, 2007.

On February 16, 2007, East Chicago Schools propounded Interrogatories and [sic] Request for Admission of Facts to Williams.  To these discovery requests, East Chicago Schools attached a letter explaining the ramifications under Federal Rule of Civil Procedure 36 of failing to respond. On February 20, 2007, Williams signed a return receipt indicating that he had received the discovery.

On June 1, 2007, East Chicago Schools filed a Motion for Summary Judgment and a Memorandum in Support of Motion.  In addition, East Chicago Schools sent Williams a *Timms* Notice to Pro Se Litigants, notifying him of his obligation to respond to the Motion for Summary

Judgment.  *See Timms v. Frank*, 953 F.2d 281, 285-86 (7th Cir. 1992), *cert. denied*, 504 U.S. 957 (1992).  Williams did not file a response to East Chicago Schools' Motion for Summary Judgment.

On July 30, 2007, East Chicago Schools filed a Motion for a Decision on Their Motion for Summary Judgment.  Williams did not file a response to the motion.

However, on July 31, 2007, East Chicago Schools received Williams' Response to Request for Admissions.

On August 13, 2007, East Chicago Schools filed a Motion on Behalf of the School City of East Chicago for a Decision on Their Motion for Summary Judgment and [sic] Strike Plaintiff's Responses to Request for Admissions.  Once again, Williams filed no brief in response to the motion.

The parties consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.  Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## MOTION TO STRIKE

Before ruling on East Chicago Schools' Motion for Summary Judgment, the Court first addresses the Motion to Strike.  Williams has not filed a response.  East Chicago Schools seeks to strike in its entirety Williams' belated response to its Request for Admission of Facts on the basis that, when the response was filed, the deadlines to respond to the Request for Admission and the Motion for Summary Judgment had passed.

On February 16, 2007, East Chicago Schools served a Request for Admission of Facts on Williams, who signed the return receipt for that document.  Despite East Chicago Schools' warning

3

of the consequences of failing to respond set forth in the correspondence attached to the Request for Admission, Williams did not respond to the Request for Admission within the thirty days provided for in Federal Rule of Civil Procedure 36(a), which would have been March 19, 2007. Thereafter, East Chicago Schools filed a Motion for Summary Judgment on June 1, 2007.  Williams filed no response to the Motion for Summary Judgment within thirty days as required by Local Rule 56.1.  Rather, it was not until July 31, 2007, thirty days after his response to the motion for Summary Judgment was due and over four months after his response to the Request for Admission was due, that Williams submitted a response to the Request for Admission to East Chicago Schools.

A failure to respond to a Request for Admission within the thirty days provided for in Rule 36(a) results in an admission of the matters in the Request for Admission, unless there is an agreement by the parties or court order to allow for a longer period of time.  Fed. R. Civ. P. 36(a); *see also United States v. Kasuboski*, 834 F.2d 1345, 1349-50 (7th Cir. 1987).

Federal Rule of Civil Procedure 36 provides, in pertinent part:

A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to the statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request. . . .

Each matter of which an admission is requested shall be separately set forth.  The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney.

Fed. R. Civ. P. 36(a).

In order to receive an extension of time after the discovery deadline has passed, Williams would be "required to show excusable neglect for failing to comply with the discovery deadline."

4

*Brosted v. Unum Life Ins. Co. of America*, 421 F.3d 459, 464 (7th Cir. 2005); *see also* Fed. R. Civ. P. 6(b)(2). A trial court determines what constitutes "excusable neglect" by considering the relevant circumstances surrounding the party's omission. *Robb v. Norfolk & W. Ry. Co.*, 122 F.3d 354, 362 (7th Cir. 1997). Some factors considered by a court are the danger of prejudice to the non-moving party, the length of the delay, the possible impact of the delay on judicial proceedings, whether the delay was within reasonable control of the movant, and whether the movant acted in good faith. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). Also, "excusable neglect" may include omissions through carelessness and mistake and situations in which the failure to comply with a filing deadline is attributable to negligence. *See Pioneer*, 507 U.S. at 388; *see also Robb*, 122 F.3d at 358.

Although the Court is aware that *pro se* litigants face unique challenges, it is generally recognized that procedural rules must be complied with in order to promote an interest in the uniform administration of justice. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). Furthermore, to ensure fairness, "rules apply to uncounseled litigants and must be enforced." *Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998).

In this instance, Williams' response to the Request for Admission was served over four months after it was due, three months after the close of discovery, and one month after the deadline for filing a response to East Chicago Schools' Motion for Summary Judgment. No excuse or explanation has been offered by Williams for the tardiness in his response to the Request for Admission. The record does not indicate any barriers to Williams answering the Request for Admission within the designated time period. Williams did not seek an extension of time from the

Court in which to file his response, nor did he seek leave of the Court to file an untimely response. The May 1, 2007 discovery deadline was an extension of the original discovery deadline for this case as a result of Williams' failure to cooperate with East Chicago Schools' discovery requests, including refusing to attend his deposition or to respond to Interrogatories and Request for Production of Documents without a court order.  In its September 1, 2006 Order requiring Williams to fully cooperate with the discovery requests, the Court explained that Federal Rules of Civil Procedure 33 and 34 provide for the serving of Interrogatories and Requests for Production of Documents without leave of court.  Similarly, Rule 36 provides for the service of a written request for an admission without leave of court, yet Williams did not provide a timely response.  Moreover, permitting the late responses would unfairly prejudice East Chicago Schools at this stage of the litigation, as East Chicago Schools timely filed its Motion for Summary Judgment and complied with all other deadlines in this case.  Finally, this delay was not in the control of East Chicago Schools as it had timely filed its Request for Admission and provided Williams with an explanation of the ramifications of failing to respond, and East Chicago Schools acted in good faith.  Williams cannot satisfy the standard for "excusable neglect," and the Court grants East Chicago Schools' Motion to Strike Plaintiff's Responses to Request for Admission.

Therefore, because Williams did not answer the Request for Admission, the matters therein are deemed admitted and are "conclusively established." Fed. R. Civ. P. 36(b).  Under Federal Rule of Civil Procedure 36, default admissions may serve as the factual foundation for summary judgment.  *Kasuboski*, 834 F.2d at 1350; *see also McCann v. Mangialardi*, 337 F.3d 782, 788 (7th Cir. 2003).  While the failure to respond to a request for admission may deprive a party of the opportunity to contest the merits of the case, the result is the orderly disposition of the case.

6

*Kasuboski*, 834 F.2d at 1350. Notably, Williams was informed by East Chicago Schools of this result should he fail to respond to the Request for Admission. Summary judgment is properly granted against the party who makes no response to a request to admit as to undisputed material facts supporting such a judgment. *Id.* at 1350. However, the court must determine whether summary judgment is appropriate under all the disputed material facts. Fed. R. Civ. P. 56. Therefore, the Court now takes the admitted facts as true for purposes of summary judgment.

### MOTION FOR SUMMARY JUDGMENT

Pending before the Court is a Motion for Summary Judgment filed by East Chicago Schools on June 1, 2007. East Chicago Schools moves for summary judgment on Williams' federal claim of employment discrimination based on race.

#### A. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate– in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no

reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe. Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc*., 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1526 (7th Cir. 1990).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

8

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of the witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 447 U.S. at 249-50; *Doe*, 42 F.3d at 443.

No heightened standard of summary judgment exists in employment discrimination cases nor is there a separate rule of civil procedure governing summary judgment in employment cases. *Alexander v. Wisconsin Dept. of Health and Family Servs.*, 263 F.3d 673, 681 (7th Cir. 2001) (citing *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1396 (7th Cir. 1997)). However, intent and credibility are critical issues, frequently found in employment cases, that are genuinely contestable and not appropriate for a court to decide on summary judgment. *Id.* Nevertheless, summary judgment in favor of the defendant is hardly unknown or, for that matter, rare in employment discrimination cases. *Wallace*, 103 F.3d at 1396.

## B.  Material Facts[1]

Cozie Williams, Jr. was hired by the School City of East Chicago ("East Chicago Schools") as a part-time School Bus Driver for the 2005-06 school year to start work on August 23, 2005. Previously, Williams had worked as a School Bus Driver for East Chicago Schools from November 7, 2002, until June 13, 2003.

Prior to his employment in 2002, Williams received and read a copy of the East Chicago School City Bus Transportation Rules and Regulations for the 2002-03 school year.  Subsequently, during an orientation session on August 22, 2005, Williams read and received a copy of the East Chicago School City Bus Transportation Rules and Regulations for the year 2005-06 ("Rules"). The Rules designate School Bus Driver duties and provide, in part:

> Mid-day routes are assigned as part of the A.M./P.M. route. . . .
> . . . .
> Mid-day routes will have a two (2) hour minimum time guarantee.  You must be on time for your scheduled midday route. . . .
> . . . .
> Each driver is responsible to be on time for there [sic] regular routes and special trips.

Def. Br., Exh. K-1.  The Rules also designate the duties and responsibilities of School Bus Aides separately from those of School Bus Drivers, which include:

> Assist the school bus driver loading and unloading of students.
> Aide will be called upon to walk children across the street and when necessary go to the door or school office to assist driver.

---

[1] Local Rule 56.1, provides in pertinent part:
> In determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file.

L.R. 56.1(b).  Because Williams did not file a response to East Chicago School's Motion for Summary Judgment and did not offer a Statement of Genuine Issues, the Court accepts the facts as presented by East Chicago Schools that have either been deemed admitted or that are supported by admissible evidence.

> . . .
> Aides must always sit in the center of the bus or in the back so they can watch all children.

Def. Br., Exh. K-5. The Rules do not indicate that the School Bus Aide is responsible for assisting the School Bus Driver with navigating his route. Additionally, the Rules set forth an "Operation Procedure" for the use of radio communications. The first step of the procedure provides: "Turn on and set the volume. This should be left on." Def. Br., Exh. K-2. The section further instructs that the radio is to be used to report "time changes" "when you are running more than 15 minutes off schedule." *Id.* Finally, the Rules provide "Reasons for Immediate Dismissal," including "[e]xtreme insubordination (refusal to comply with any reasonable instructions of the director/dispatcher/office staff)." Def. Br., Exh. K-4.

At the August 22, 2005 orientation meeting, the East Chicago Department of Transportation Dispatcher, Susanna Olavarria, gave Williams a route list which contained a list of student names, addresses, phone numbers, teachers' names for each student for morning and afternoon classes, and the addresses for Franklin and Lincoln Elementary Schools. Specifically, Olavarria assigned Williams to pick up special education pre-school students, explained the route to him, and informed him that he was responsible for preparing his route of travel with the use of proper directions to timely pick up students from their homes and from school. Starting at 7:00 a.m., Williams was to transport morning students from home and drop them off at the two elementary schools between 8:00 a.m. and 8:15 a.m. As part of the midday route, Williams was to pick up afternoon students from home and bring them to the elementary schools no later than 11:30 a.m.. and, at the same time, pick up the morning students from the schools and return them home no later than 11:45 a.m. Later,

11

Williams was to return to the schools to take the afternoon students home. East Chicago School Bus Aide Odilia Castillo was assigned to the same bus as Williams, Bus No. 35.

On the first day of school, August 24, 2005, Olavarria received telephone calls from parents of children who were not picked up or returned from school by Bus No. 35. Olavarria attempted to call Williams on the bus radio, but he failed to respond. Furthermore, Williams did not contact Olavarria by radio to ask for assistance with his route. Olavarria notified all bus drivers to be alert for Bus No. 35 while she left to find Williams herself on another bus.

Director of Pupil Personnel, Wesley Bennett, oversees the East Chicago Transportation Department. He was notified by Principal Nancy Sharp that parents had called around 1:00 p.m. The parents complained that morning special education pre-school children picked up from Lincoln School at 10:45 a.m. had not arrived home by the expected time of 11:45 a.m. Sharp told Bennett that the East Chicago Transportation Department could not contact Williams by radio and that the bus and the special education pre-school children were missing.

At approximately 1:20 p.m., Olavarria found Williams on Bus No. 35 on Indianapolis Boulevard in East Chicago with a special education pre-school child who attended a morning class. Other special education morning pre-school children did not arrive home until after 11:45 a.m. as well. Olavarria told Williams that she had tried to reach him by radio but that he had not responded. She checked the bus radio and found that Williams' radio volume was set at a level too low to be heard.

Thereafter, Bennett told Olavarria not to let Williams finish the route and to send him to Bennett's office. In his office, Williams told Bennett that he had difficulty delivering the students to their home addresses. Further, Williams admitted that he did not contact Olavarria to ask for her

12

assistance in delivering the students to and from the elementary schools. When asked why he did not inform Dispatch that he had difficulty delivering the students to their home addresses, he stated that the radio was inoperable. However, upon testing by an East Chicago Schools mechanic and the Director of Transportation, the radio was discovered to be in proper operating condition.

Williams complained to Bennett that Castillo, the Bus Aide, did not help him locate the homes of the children. He also admitted to Bennett that he was late transporting afternoon students to the elementary schools because he could not find their addresses. Additionally, he acknowledged that he was late in taking the morning students home for the same reason.

At this point, Bennett told Williams that he should not report for work until further notice and that Bennett would be conducting an investigation. After the investigation, Bennett instructed the Director of the Transportation Department to inform Williams that his employment was terminated due to his actions on August 24, 2005. After being informed of his termination on August 29, 2005, Williams called Bennett and repeated that Castillo, the Bus Aide, did not help him. Bennett explained, as he had during their initial conversation, that it was not within the scope of the School Bus Aide's job duties to help Williams perform his route. Bennett reiterated that Williams would no longer be permitted to drive buses for East Chicago Schools and that he was terminated as a result of his actions on August 24, 2005. Both Bennett and Olavarria averred in their Affidavits that Williams did not follow the procedures in the East Chicago School City Bus Transportation Rules and Regulations for 2005-06 because he was untimely with his route, failed to contact the dispatcher when he was more than 15 minutes late, and did not turn up the volume on his radio to a proper level.

## C.  Analysis

Williams' Complaint alleges that East Chicago Schools discriminated against him based on race when his employment as a School Bus Driver was suspended and subsequently terminated after he took too long to pick up and deliver children on August 24, 2005.  In the Complaint, he alleges that the he was given wrong directions to the children's homes by a "Mexican" co-worker and that East Chicago Schools did not take any action against the co-worker as a result of the same incident.

In its Motion for Summary Judgment, East Chicago Schools argues that Williams was terminated for valid, non-discriminatory reasons based on his actions of August 24, 2005, when he did not perform his job adequately.  Thus, East Chicago Schools claims it is entitled to summary judgment on the ground that there is no direct nor indirect evidence of race discrimination against Williams in the course of his termination.  Williams did not respond to East Chicago Schools' Motion for Summary Judgment and has not offered evidence to refute the supported admissible facts set forth by East Chicago Schools.[2]

Title VII prohibits discrimination in employment based on race: "It shall be an unlawful employment practice for an employer . . . to discharge any individual because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  To prove a case of discrimination under Title VII, a plaintiff must offer either direct or indirect evidence of discrimination.  *Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005).  Regardless of the method, the burden is always on the plaintiff to demonstrate that genuine issues exist for trial.  *Keri v. Bod of Trs. of Purdue Univ.*, 458 F.3d 620, 643-44 (7th Cir. 2006).

---

[2] As set forth above, because the Court has stricken Williams' untimely response to East Chicago Schools' Request for Admission of Facts, the matters therein have been deemed admitted.

Direct evidence of race discrimination is evidence that would prove discriminatory conduct on the part of the employer without reliance on inference or presumption as perceived by the trier of fact. *Rozskowiak*, 415 F.3d at 612. Direct evidence can take two forms: (1) an outright admission by the decision maker that the challenged action was undertaken, or (2) circumstantial evidence of discriminatory reason by the employer. *Id.*; *Rogers v. City of Chi.*, 320 F.3d 748, 753 (7th Cir. 2003). In this case, Williams has not offered any direct evidence of race discrimination for his termination nor is there any direct evidence in the record to support the claim that his termination was based on race.

Indirect evidence of discrimination is analyzed under the familiar burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 845 (7th Cir. 2007); *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 896-97 (7th Cir. 2003). Under the indirect method set forth in *McDonnell Douglas*, a plaintiff must first establish a prima facie case of race discrimination. *Keri*, 458 F.3d at 643. When a plaintiff alleges that the adverse action at issue is his termination, the plaintiff must show that (1) he was a member of a protected class; (2) he was meeting his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) his employer sought someone else to perform the same work after he left. *Pantoja*, 495 F.3d at 846 (explaining that the fourth element of the prima facie case is modified when the adverse employment action is the employee's termination) (citing *Matthews v. Allis-Chalmers*, 769 F.2d 1215, 1217 (7th Cir. 1985))).

If the plaintiff establishes a prima facie case of race discrimination, the burden of production shirts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision. *Keri*, 458 F.3d at 643 (citing *Johnson*, 325 F.3d at 897). However, the employer's burden

15

of production is "quite light" and "the mere articulation of the reason . . . puts the onus back on the plaintiff employee to prove pretext." *Flores v. Preferred Technical Group*, 182 F.3d 512, 515 (7th Cir. 1999).

Based on the evidence of record viewed in the light most favorable to Williams, Williams cannot survive summary judgment on his claim of race discrimination under the indirect burden-shifting method of *McDonnell Douglas*. First, Williams has failed to establish a prima facie case of discrimination. Although Williams is a member of a protected class, he suffered an adverse employment action when East Chicago Schools terminated his employment, and East Chicago Schools probably hired another bus driver to service the route left vacant following Williams' departure (although there is no evidence of record to this effect nor is there evidence of the race of Williams' replacement), nevertheless Williams has failed to establish that he was meeting his employer's legitimate job expectations.[3]

As a School Bus Driver, Williams was responsible for being on time for his regular route. On August 24, 2005, Williams did not pick up special education pre-school children from their homes or from school within the required time periods as directed by Susanna Olavarria, the Dispatcher. After receiving calls from parents of children who had not been picked up or who had not been returned from school within the normal time limits, Olavarria attempted to contact Williams on his bus radio without success. Eventually, Olavarria found Williams and his bus with

---

[3] In its brief, East Chicago Schools sets forth the standard fourth prong of the prima facie case for employment discrimination as requiring a plaintiff to show that "other similarly situated employees who were not members of his protected class were treated more favorably." Def. Br., p. 13. However, because the alleged adverse employment action in this case is Williams' termination, the Court follows the variation on the fourth prong of the prima facie case as articulated by the Seventh Circuit in *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 845 (7th Cir. 2007), which holds that the fourth prong should require that the employee prove that his employer sought someone else to perform the same work after the employee left. *Id.*

a student on board who had attended morning class and who should have already been returned home. Other students had also been returned home late. At no time did Williams contact Olavarria by radio to ask for assistance with his route, nor did he radio to report that he was running more than fifteen minutes behind schedule, as set forth in the Rules. In addition, according to the Rules, Williams was required to set the volume on his radio to ensure proper communication with the dispatcher. The evidence of record indicates that the radio on Williams' bus was in proper working order but that he did not have the volume set at an audible level.

After being removed from his route, Williams complained to Wesley Bennett, the Director of Pupil Personnel, that Odilia Castillo, the Bus Aide, did not help him locate the homes of the children. However, according to the Rules, this was not one of Castillo's responsibilities, which Bennett explained to Williams. Williams admitted to Bennett that he was late transporting afternoon students to the elementary schools because he could not find their addresses and that he was late in taking the morning students home for the same reason. Accordingly, Williams cannot prove that he was meeting East Chicago Schools' legitimate job expectations; he did not perform his duties as a School Bus Driver and did not comply with the reasonable instructions of the director or dispatcher, as set forth in the Rules by his employer.

Even if Williams could demonstrate a prima facie case of race discrimination, East Chicago Schools has proffered a legitimate, non-discriminatory reason for terminating his employment. East Chicago Schools states that it terminated Williams for the events of August 24, 2005, when he was more than an hour late in delivering children from the schools to their homes on the first day of school. East Chicago Schools asserts that Williams violated the communication protocol set forth

17

in the Rules when he failed to communicate his difficulty in finding the children's homes to the dispatcher and did not have the volume on his radio set at a proper level.

The burden would then shift to Williams to prove that this articulated reason is a pretext for discrimination. *See Perez v. Illinois*, 488 F.3d 773, 777-78 (7th Cir. 2007). "A pretext . . . is a deliberate falsehood." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006) (citing *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006); *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 685 (7th Cir. 2000) ("[P]retext means a dishonest explanation, a lie rather than an oddity or an error.")). "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise or well-considered." *Id.* (citing *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000)). Williams has offered no evidence to rebut East Chicago Schools' proffered reason for terminating his employment, nor is there any evidence of record of pretext. Accordingly, Williams cannot maintain his claim of race discrimination and summary judgment in favor of East Chicago Schools is appropriate.

## CONCLUSION

Based on the foregoing, the Court hereby:

(1) **DENIES as moot** the Motion on Behalf of the School City of East Chicago for a Decision on Their Motion for Summary Judgment [DE 33-1] and **GRANTS** the Motion to Strike Plaintiff's Responses to Request for Admissions [DE 33-2];

(2) **GRANTS** the Motion for Summary Judgment [DE 28]; and

(3) **DENIES as moot** the Motion on Behalf of the School City of East Chicago for a Decision on Their Motion for Summary Judgment [DE 31].

The Court **VACATES** all previously scheduled deadlines in this matter.

SO ORDERED this 17th day of October, 2007.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:   All counsel of record